The Town of Duanesburgh *vs.* Nathaniel C. Jenkins, as commissioner, and The Albany and Susquehanna Rail Road Company.

The power to subscribe for rail road stock, or to issue bonds for the purchase of such stock, or the payment of subscriptions therefor, is not one of the general powers possessed by towns. Before any such acts can be done by the officers of a town, or any commissioner in its name, the power must be conferred by act of the legislature.

The legislature may grant such power; which may be either general or special. And the legislature, in granting it, may impose as many conditions, limitations and restrictions as it shall deem proper:

Where the power, given by the legislature to a town to subscribe for stock in a rail road company and to issue its bonds therefor, was on condition, 1. That twelve or more freeholders, residents of the town, should apply to the county judge for the appointment of commissioners; 2. That the consent in writing of a majority in number and amount of the resident tax-payers of said town to such subscription and issuing of bonds, designating the amount, should be first obtained; *Held* that such application and consent were pre-requisites or conditions precedent to the authority of the town to take stock and issue bonds; and that such authority, being in excess of the ordinary and general powers of towns, no jurisdiction could be acquired without complying with the conditions imposed.

Persons receiving bonds issued by towns are presumed to know the law, and are bound at their peril to ascertain whether the statute, authorizing their creation, has been complied with.

Where a statute authorizing a town to subscribe for rail road stock declared that it should be lawful for the commissioner to act, provided the consent in writing of a majority of the tax-payers appearing upon the *last assessment roll* should first be obtained. *Held* that the term "the last assessment roll," as used in the statute, and in an amendment thereto, referred not to the passage of the acts, but to the time of the subscription for stock by the town, and the intent was that if a majority of the then property owners of the town were willing to have their estates encumbered for such purpose, and said so in writing, the commissioner might incur the debt.

If bonds are issued by a town without the consents required by the statute having been obtained, they are void, at least in the hands of the rail road company to whom they are issued, if not in the hands of every subsequent holder.

Requisites of the affidavits proving that the written assent of the requisite number of resident tax-payers, to a town subscription for rail road stock, has been obtained.

Town of Duanesburgh *v.* Jenkins.

THIS was an action commenced to restrain the defendants from negotiating certain bonds, issued by the defendant Jenkins, as commissioner of the town of Duanesburgh. A temporary injunction was obtained, upon the complaint and affidavits, restraining the defendants from disposing of, or transferring said bonds, until the decision of a motion upon an order to show cause; and at the same time an order was granted requiring the defendants to show cause at a special term therein named, why such injunction should not be continued until judgment in the action.

The motion came on to be heard, upon the aforesaid papers, and upon affidavits in opposition, at a special term held on the 30th of June, 1862, when the motion was denied and the temporary injunction dissolved. From this order the plaintiff appealed.

The facts, as set forth in the complaint and affidavits, are these: The defendant, the Albany and Susquehanna Rail Road Company, is a body corporate, organized previous to 1853, for the purpose of constructing and operating a rail road from the Hudson river, at Albany, through the counties of Schenectady, Otsego, Delaware, Chenango and Broome, to Binghamton. In 1856, an act of the legislature was passed, authorizing any town in said counties to borrow money on its credit to aid in the construction of said rail road. The first section provided that on the application in writing of twelve or more freeholders, residents of any such town, it should be the duty of the county judge of the county where such town was situate, to appoint, &c. not more than three freeholders, residents of said town, commissioners to carry into effect the purposes of said act. The second section declared that it should be lawful for said commissioners to borrow on the faith and credit of such town, provided the consent in writing of *two-thirds* of the tax-payers, representing *two-thirds* of the taxable property of said town, appearing upon the last assessment roll, should be first obtained, proof of which should be by affidavit *of one of said commis-*

*sioners,* filed in the town and county clerks' offices, any sum not exceeding $100,000, &c. and to execute bonds therefor, under their hands and seals. The other sections provided for the sale and disposition of such bonds, the investment of the money, the right of said towns to become stockholders, to dispose of stock, and to raise money to meet the payment of principal, interest, &c. &c.

In 1857, the first, second, third, fourth and sixth sections of said act were amended, the second section of which now reads as follows: "It shall be lawful for said commissioner or commissioners to borrow, on the faith and credit of such town, provided the consent in writing of *a majority* of the tax-payers, *their heirs or legal representatives,* representing *a majority* of the taxable property in said town, appearing upon the last assessment roll, shall first be obtained, proof of which shall be by affidavit, filed in the town and county clerks' offices, any sum not exceeding $100,000, &c. &c.; and in case the said consents, in whole or in part, shall have been obtained under the assessment rolls of the years 1855 or 1856, the same may be used and completed with like effect, and shall be as valid as if obtained under the last assessment rolls next preceding the said subscription, provided the consents subscribed shall represent a *majority in amount* of the said last assessment roll."

In 1859 another act was passed by the legislature, entitled "An act to increase the capital stock of the Albany and Susquehanna Rail Road Company," &c., containing the following sections: "Sec. 2. Any town now authorized to subscribe to the capital stock of said company, whenever the proofs shall have been filed in the clerk's office of the consent, in writing, of a majority of the tax-payers, their heirs or legal representatives, representing a majority of the taxable property of said town, in pursuance of an act passed in 1856 and amended in 1857, authorizing a subscription by the commissioners in the corporate name of said town, to the capital of said company [may subscribe to said capital stock]; such

Town of Duanesburgh *v.* Jenkins.

subscription shall be made by the commissioners," &c. and they may issue the bonds authorized by said act, &c. "Sec. 6. All bonds issued by the commissioners of the several towns shall be valid and binding upon the town represented by such commissioners, in the hands of bona fide holders or owners thereof."

In 1863, an act amendatory of the several acts authorizing town subscriptions to the stock of said corporation, was passed, the first section of which reads as follows: "In any case where the commissioners of any town authorized to subscribe to the stock of the Albany and Susquehanna Rail Road Company, shall have filed in the town and county clerks' offices proof by affidavit of the consent of a majority of the tax-payers, their heirs or legal representatives, of such town, preliminary to a subscription on behalf of said town to the stock of said company, such proof by affidavit shall be valid and conclusive to authorize said subscription to the stock and bonds to the amount specified in such proof, and any clerical or other defect in such proof by affidavit, shall not invalidate it."

On the 6th day of May, 1862, the defendant, Nathaniel C. Jenkins, was appointed a commissioner for the town of Duanesburgh, under the acts above cited, and accepted the trust. On the 13th day of the same month, he caused to be filed in the clerks' offices of the town of Duanesburgh and the county of Schenectady, the affidavits of John D. Wood, Charles Courter, Nathaniel C. Jenkins, Joseph H. Ramsey, Benjamin F. Wood and Ira Marsh, all sworn to on the 5th day of May, 1862; and two further affidavits of Nathaniel C. Jenkins, one sworn to on the 14th and the other on the 15th of May, 1862, which are claimed to be proof by affidavit of the consent in writing of a majority in number and amount of the resident tax-payers of said town, as per the assessment roll of 1855, being the last assessment roll of said town previous to the passage of the act of 1856; and the said commissioner thereupon subscribed to the stock of said rail road

corporation for said town, the sum of $30,000, issued the bonds of said town therefor, and on the 26th day of May, 1862, delivered the same to the treasurer of said corporation.

It is averred in the sworn complaint, and not denied in the opposing affidavits, that the consent of a majority in number and amount of the resident tax-payers of said town, according to the assessment roll of 1861, the last assessment roll preceding the issuing of the bonds, had not been obtained to the issuing of said bonds, and that no affidavits have been filed, as required by statute, purporting to show the consent of such majority, according to the assessment roll of 1861.

The plaintiff further shows that a number of the persons named in the affidavits on file as consenting, are dead, and are not upon the assessment roll of 1861 ; and that a number of others are not on said assessment roll ; that some of the persons consenting appear twice in said affidavits ; that the persons named in said affidavits as consenting, represent but one-third of the resident taxable property, according to the roll of 1861.

The affidavits filed are substantially in one form, and the affiant states "that the affiant was present when the following named persons, tax-payers, *their heirs or legal representatives,*" &c. &c. "appearing upon the assessment roll of 1855, subscribed, *or authorized to be subscribed* their consent in writing," &c. &c. giving the names of individuals, without any designation who are heirs, and who representatives, who subscribed, or who authorized their names to be subscribed.

The affidavit of the defendant Jenkins, sworn to on the 14th day of May, 1862, says that the persons named in the annexed affidavits, (the affidavits filed,) compose a majority of the resident tax-payers of said town, their heirs or legal representatives, representing a majority of the property owned by, or taxed to, resident tax-payers of said town appearing on the assessment roll of said town, for the year 1855, that being the last assessment roll prior to the commencement of obtaining the consent in writing of the tax-payers, &c. and

that all put down are resident tax-payers but J. H. Rush-more, &c.

*W. A. Beach*, for the plaintiff.

*J. H. Ramsey*, for the defendants.

*By the Court*, JAMES, J. The point first taken by the defendants is "that the town of Duanesburgh, as such, cannot maintain this action. The opinion of the learned judge who decided this case at special term, fully answers this point, and his opinion, in that respect, is adopted by this court.

"The power to subscribe for rail road stock, or issue bonds for the purchase of rail road stock, or the payment of subscriptions therefor, is not one of the general powers possessed by towns. Before any such act can be done by the officers of the town, or any commissioner in its name, the power must be conferred by act of the legislature. It has been decided by the highest court of this state that such power may be granted. (*The Bank of Rome* v. *Village of Rome*, 19 *N. Y. Rep.* 20. *Starin* v. *Town of Genoa*, 23 *N. Y. Rep.* 439, 449.) Such power may be either general or special; and the legislature in granting the power, may impose as many conditions, limitations and restrictions as it shall deem proper." In this case, the power to subscribe for stock, and issue bonds, was special. It was conditioned, 1st. That twelve or more freeholders, residents of the town, should apply to the county judge for the appointment of commissioners; 2d. The consent in writing of a majority in number and amount of the resident tax-payers of said town, that such subscription be made and bonds issued, designating the amount. Without such application and consent, no authority to take stock and issue bonds existed; they were pre-requisites or conditions precedent. Being in excess of the ordinary and general powers of towns, no jurisdiction could be acquired

without complying with the conditions imposed; in fact, the language of the act is, that it shall be lawful to borrow money, &c. provided the consent be obtained. Persons receiving bonds issued by the towns are presumed to know the law, and bound at their peril to ascertain whether the statute authorizing their creation has been complied with. (23 *N. Y. Rep.* 439, 449.)

In this case no question is made as to the appointment of the commissioner, and we are therefore bound to assume that it was properly made. But it is claimed that the condition precedent, the requisite to make it lawful for the commissioner to act, viz. the consent of a majority in number and amount of the resident tax-payers, was never obtained, and that such fact affirmatively appears from the affidavits on file.

Jenkins was appointed commissioner May 6, 1861; the affidavits which it is claimed show consent were filed May 15, 1862; the subscription to the rail road stock was made, and the bonds for the same issued, after that; and the affidavits do not claim the consent of a majority of the tax-payers according to the assessment roll of 1861, the last roll preceding the subscription, but only the consent of a majority in number and amount of the tax-payers according to the assessment roll of 1855; while the allegation that a majority of the tax-payers according to the assessment roll of 1861 have never consented, is not denied.

The statute is, that it shall be lawful for the commissioner to act, provided the consent in writing of a majority of the tax-payers appearing upon the *last assessment roll* shall first be obtained. What roll is meant by the term "*last assessment roll ?*" Does it mean the one next preceding the first passage of the act; or next preceding the amendment of the act; or next preceding the subscription for stock and incurring the liability? The defendants insist that this term has reference to the roll preceding the passage of the original act; and so the special term held. If such be the right construction, then it does not seem to be denied that a majority of

Town of Duanesburgh *v.* Jenkins.

the tax-payers on that roll had given their consent to this subscription.

As I have before shown, the original act authorizing towns to subscribe to the stock of the defendants, was passed in 1856, conditioned that two-thirds of the tax-payers appearing upon *the last assessment roll* should consent ; it is to be inferred that efforts were made to obtain the consent of a sufficient number of the tax-payers under that act, and that those efforts failed. The next year, 1857, the act was amended by reducing the consent to a majority of the tax-payers, and further providing that " in case the said consents, in whole or in part, shall have been obtained under the assessment rolls of the years 1855, or 1856, the same may be used and completed with the like effect, and shall be as valid, as if obtained under the last assessment rolls next preceding the said subscription, provided the consent subscribed shall represent a majority *in amount* of the *said last assessment roll.*

If the phrase " last assessment roll," in the original act, had reference to the roll next preceding the passage of the act, then the roll of 1855 was meant, because the act was passed on the 31st of March, 1856. If that phrase had reference to the roll next preceding the passage of the original act, it should be held to have the same reference when used in the amended act which would there mean the roll of 1856, as the amendment was passed in April, 1857. It is true that the act of 1857 declares that " the second section of said act is hereby amended and shall read as follows," still such amendment, not being made to correct an error in the former act, does not relate back and take effect from the passage of the original act, but only changes the original act from the passage of the amendment. (*Ely* v. *Holton,* 15 *N. Y. Rep.* 595, 598.) And the legislature having by special words provided that the doings under the original act might be made available under the amended act, have declared that they did not intend the amendment should have effect anterior to its passage.

Town of Duanesburgh *v.* Jenkins.

But in my judgment the term "the last assessment roll," as used in both statutes, refers not to the passage of the acts, but to the time of the subscription for stock by the towns. What *is it* the legislature declared? That it shall be *lawful* for the commissioner of the town to borrow, &c. provided the consent in writing of a majority of the tax-payers is obtained. What tax-payers? Those who were tax-payers before the passage of the act, or those who were tax-payers when the subscription was to be made; or as in this case, the tax-payers of 1855 or 1861? It seems to me there can be no mistaking the meaning of the law or the intent of the body that enacted it. The intent was that the commissioner should have the consent of the tax-payers to be charged before it would be lawful for him to act. In other words, if a majority of the then property owners of the town were willing to have their estates encumbered for such purpose, and said so in writing, the commissioner might incur the debt. Such is the construction put upon the act by the legislature itself, in the last clause of section two, as amended in 1857. It says "in case the said consents, in whole or in part, shall have been obtained under the assessment rolls of 1855 or 1856," they may be used, &c. If the term "last assessment roll" had reference to the roll preceding the passage of the act, how happened it that consents were being obtained, according to the assessment rolls made after its passage, and why were such consents placed on a par with the consents obtained under the roll of 1855, unless upon the theory that the statute had reference to the assessment roll next preceding the subscription? But further, the amended act says, the consents obtained under the rolls of 1855 and 1856 may be used and completed with like effect and be as valid as if obtained under the last assessment roll next preceding the subscription, provided the amount shall represent *a majority in* AMOUNT of the said last assessment roll; clearly recognizing the term "the last assessment roll" as meaning that preceding the subscription to the stock, but allowing consents previously obtained on former

assessment rolls to be used with like effect as if obtained under the roll previous to the subscription, provided *such consents* should represent a majority *in amount* on *said last assessment roll,* that is, the assessment roll next preceding the subscription. The term " *the said* last assessment roll," at the close of section two, by all settled rules of construction had reference to its next antecedent.

If I am right in this view, it follows that the consents required by statute to make it lawful for the commissioner to act, had not been obtained, and that it so appeared on the face of the affidavits filed. Therefore it was not lawful for the commissioner to make said subscription or issue said bonds; and the bonds are void, at least in the hands of the defendants, if not in the hands of every subsequent holder.

The proof of authority to sign for stock and issue bonds in payment, the act declared, might be by affidavit, filed in the town and county clerks' offices. But affidavits filed for that purpose would not furnish *proof* of authority unless they stated facts requisite to that end. To make them proof the affidavits should show who signed, that he was a resident of the town, assessed on the roll, and the amount; if not signed personally it should state by whom signed, and the authority should be in writing and filed; if the estate of a deceased person assessed on the last roll was named, the affidavit should state who signed for the estate, and if the heirs, why; and if the representatives, why; and these papers should also state the number and amount of resident tax-payers and assessments. But the affidavits produced as the ones on file and under which the commissioner assumed to act, are unfortunately deficient in all these requisites. The affidavits are in the alternative as to whether the tax-payer, his heirs, or personal representatives, subscribed or authorized to be subscribed their consent; and if authorized, it does not state the authority, nor furnish any written evidence of it. These affidavits may be every word true, and yet not half the tax-payers named have ever given their consent. Such affidavits fall

far short of making "*proof*" of the fact sought to be established. Proof is the perfection of evidence; for without evidence there is no proof; although there may be evidence which does not amount to proof. The affiants are quite liberal in their verifications of conclusions, but such verifications are not proof of any fact. Proof by affidavit can only be made by a statement and verification of such facts as are requisite to establish the principal fact sought to be maintained.

The defects in the affidavits of those who undertook to obtain the requisite number of consents, are not cured by the very general and wholesale affidavit of the commissioner. He is quite liberal, but not sound, in his statements of conclusions of law; he nowhere states that any of the persons named in the affidavits signed a consent, or authorized one to be signed, and hence his affidavit falls far short of making *proof* that such consents were obtained.

The next effort to cure the deficiencies in these affidavits, and make proof where none existed, is the act of 1863. That also falls short of accomplishing the design claimed for it. That statute must have a reasonable construction. It cannot be presumed the legislature intended to repeal the condition precedent imposed by the acts of 1856 and 1857; and yet if the phrase "or other defects" were to have the force claimed, it would in effect work such repeal. If the affidavits filed in this case are so deficient of facts as not to constitute proof of consent by the tax-payers, and are not to be held void, then the commissioner might act without such consent. That such was not the intention of the law-makers appears on the face of the act itself; it is only to apply in cases where the commissioner was authorized to take stock, &c. and shall have filed his affidavits containing *proof* of consent, &c. and when that has been done it is declared that such proof shall not be invalidated by " clerical and other defects;" that is clerical, or formal, or defects of like description. But not that an affidavit which contained no statement of facts, should

be held to contain the proof imposed by the several acts as a condition precedent to the commissioner's authority to act.

It follows from these views, that upon the case as now presented it was not lawful for the defendant Jenkins, as commissioner of the town of Duanesburgh, to subscribe for the stock of the Albany and Susquehanna Rail Road and to issue his bonds therefor, because it is not shown that the consents of a majority in number and amount of the resident tax-payers to such acts was ever obtained; and because the affidavits on file, under which said commissioner ⚬assumed to act, furnish no *proof* of such consent, but on the contrary show upon their face that the consents were not of the tax-payers required by the statutes.

The order of the special term, dissolving the temporary injunction and denying the application for an injunction until final judgment in the action, should be reversed, and an injunction order restraining the defendants until final judgment in the action, according to the prayer of the complaint, be directed to issue in the usual form and upon the usual conditions.

[St. Lawrence General Term, October 6, 1863. *Potter, Bockes* and *James,* Justices.]