## The Town of Duanesburgh *vs.* Nathaniel C. Jenkins and others.

To subscribe for railroad stock, or to purchase stock, and become a member of a corporation and issue its bonds therefor, is not one of the general powers possessed by towns.

Before a town can become bound by persons assuming to act as its officers for that purpose, the authority for such action must have been conferred by the legislature, and accepted by the town.

Such power may be conferred upon towns; and when conferred, and accepted by a town, it may be exercised by officers or commissioners, as shall be specified in the act.

But acceptance by the town can not be forced. A town can not, by mere legislative enactment, be compelled to subscribe for the stock of a private corporation, or to issue its bonds in payment for such subscription, any more than can an individual.

The authority to grant the power, and declare the mode of acceptance, is with the legislature; but the option of acceptance is with the town.

Where the power to subscribe for the stock of a railroad company, and issue bonds in payment, is offered to a town, by an act of the legislature, such power, until accepted in the mode specified in the act, has no vitality, and all action in the matter, in the name of the town, is without authority, and void.

If the mode of acceptance specified is by the written consent of a majority of the tax payers, a consent in that form is a condition precedent to vitality in the power.

The appointment of a commissioner, by the town, to execute the act, if the same shall be accepted, is not an acceptance of the power.

Where a statute authorizing towns to subscribe for railroad stock declared that it should be lawful for the commissioner of any town to act, provided the consent in writing of a majority of the tax payers appearing upon "*the last assessment roll*" should first be obtained; *Held* that the term "the last assessment roll," as used in the statute and in an amendment thereto, had reference not to the passage of said acts, or either of them, but to the roll next preceding the time of acceptance by the town.

Where it was declared, by a statute, (*Laws of* 1864, *ch.* 402,) that "in any case where the commissioner of any town *authorized to subscribe* to the stock of the Albany and Susquehanna Railroad Company, shall have filed in the clerks' offices affidavits of the consent," &c. such proof by affidavits should be valid and conclusive to authorize the subscription to stock, and the issue of bonds, notwithstanding any clerical or other defect in such proof by affidavit; *it was held* that it was only in cases where the commissioner appointed for a town had *authority* to act for the town, that the statute had application; and that the legislature did not enact, or assume or intend to enact, that any affidavits which a commissioner might have filed should be valid and conclusive proof to uphold subscriptions, and legalize bonds, without regard to their contents, and whether the consents of the tax payers had been given or not; but only

Town of Duanesburgh *v.* Jenkins.

to cure clerical or other defects in the affidavits or proof of authority filed, in cases where the power had been accepted, the consents in fact given, and, *under actual authority*, stock had been subscribed for, and bonds issued.

The act of March 4, 1863, amending the several acts authorizing town subscriptions to the stock of the Albany and Susquehanna Railroad Company, and the act of April 25, 1864, amending the first mentioned act, did not assume to repeal the conditions precedent imposed by the acts of 1856 and 1857, or to invest a town with power, or its commissioner with authority, to act without the assent of the tax payers therein required.

A town may sue and be sued, in all controversies between it and others, and in all litigations must sue and be sued by its name; except where officers are specially authorized by law to sue in their name of office, for its benefit.

A town may maintain an action to restrain the negotiation of bonds issued in the name of the town by a person assuming to act as its commissioner, in payment for subscriptions to stock of a railroad company; where the statute under which the bonds purport to be issued declares that "all bonds issued by the commissioners of the several towns shall be binding upon the town," &c. "in the hands of *bona fide* holders and owners," &c. and there is consequently a color of liability against the town.

If a statute authorizing a town to take stock in a railroad corporation, and issue its bonds therefor, has not been accepted by the town, nor the conditions precedent requisite to authorize the commissioner of the town to subscribe for stock, and issue bonds, complied with, the commissioner is not the agent of the town, nor authorized to act for it, or in its behalf, in the premises; and his subscription for stock, and issue of bonds, in the name of the town, will be unauthorized acts, and wholly void. And no subsequent statute can legalize such bonds, or make them binding.

THIS is an appeal from a judgment in an action tried before the court, at the circuit, without a jury.

It was admitted on the trial that in May, 1862, the defendant, Jenkins, assuming to act as commissioner of the town of Duanesburgh, subscribed for $30,000 of the stock of the Albany and Susquehanna Railroad Company, and delivered that amount of the bonds of said town to said company in payment; which stock said Jenkins, as such commissioner, still holds. That previous to making said subscription for stock and issuing said bonds, and on the 15th day of May, 1862, the affidavits set forth were filed in the offices of the clerks of said town and the county of Schenectady, and were the only affidavits relating to the consent of tax payers in said town.

It was proved that the whole amount assessed to resident tax payers on the tax roll of 1861 was $825,810 ; and that the amount assessed for that year to the persons named in the said affidavits was but $277,092.

The affidavits were as follows :

"State of New York,  
· Schenectady County,  } ss :

*John D. Wood*, of the town of Duanesburgh, in said county, being duly sworn, says : That he was present when the following named persons, tax payers, *their heirs or legal representatives*, representing taxable property in the town of Duanesburgh, in said county, appearing upon the assessment roll of said town for the year 1855, subscribed, *or authorized to be subscribed*, their consent, in writing, that the commissioner or commissioners appointed, or to be appointed, for that purpose, should borrow on the faith and credit of said town the sum of thirty thousand dollars, for a term not exceeding twenty-five years, at a rate of interest not exceeding seven per cent per annum, and to execute bonds therefor, under their hands and seals, for the purposes and in pursuance of an act entitled ' An act to authorize any town in the county of Schenectady, Schoharie, Otsego, Delaware, Chenango or Broome, to subscribe to the capital stock of the Albany and Susquehanna Railroad Company,' passed March 31, 1856, as amended, viz : Abraham Conklin, William F. Smith, Elias Smith, Martin H. Smith, Alexander Tigert, Sarah Gibson, Hugh H. McMillan.          John D. Wood.

Sworn before me this 5th )  
    day of May, 1862.       )  
          John W. Head, *Justice of the Peace.*"

Also, one affidavit of Charles Cowter, one of Nathaniel C. Jenkins, one of Joseph H. Ramsey, one of Benjamin F. Wood, and one of Ira Marsh, each and every of which affidavits are of the same date, and of the same form as the above, and in the aggregate recite the names of 266 tax

Town of Duanesburgh *v.* Jenkins.

payers of said town of Duanesburgh, set forth in the same form as the above affidavit.

Also two affidavits of Nathaniel C. Jenkins, as follows:

"STATE OF NEW YORK,}
 *Schenectady County,* } *ss:*

*Nathaniel C. Jenkins,* of Duanesburgh in said county, being duly sworn, says: That he is commissioner of the town of Duanesburgh in said county, appointed in pursuance of an act entitled 'An act to authorize any town in the county of Schenectady, Schoharie, Otsego, Delaware, Chenango, or Broome, to subscribe to the capital stock of the Albany and Susquehanna Railroad Company,' passed March 31, 1856, and the several acts amending the same. That the persons named in the annexed affidavits, comprise a majority of the resident tax payers of said town, their heirs or legal representatives, representing a majority of the taxable property owned by, or taxed to resident tax payers of said town, appearing upon the assessment roll of said town for the year 1855, that being the last assessment roll prior to the commencement of obtaining the consent, in writing, of the tax payers required by the said act, said consent having been in part obtained under the said assessment roll of 1855, before the passage of the act amending the said act, passed April 14, 1857, the said consent of tax payers thus obtained under the said assessment roll of 1855 having been used and completed as if obtained under the last assessment roll next preceding the said subscription; that the consent thus subscribed represents a majority of the resident tax payers, residing within said town, representing a majority of the taxable property, owned by, or taxed to resident tax payers of said town, in pursuance of an act entitled 'An act to increase the capital stock of the Albany and Susquehanna Railroad Company, and to regulate the manner and payment of town subscriptions to the stock of said company,' passed April 16, 1859.

That the whole number of resident tax payers, their heirs or legal representatives, residing in said town, and appearing on the assessment roll, is five hundred and six (506,) and that the number of the resident tax payers residing within said town, who have thus consented is two hundred and sixty-nine (269.)

That the whole amount of the taxable property owned by or taxed to resident tax payers of said town, is eight hundred and eighty-six thousand seven hundred and sixty dollars ($886,760,) and that the resident tax payers consenting as aforesaid, represent four hundred and fifty-eight thousand nine hundred and sixty-seven dollars ($458,967) of the taxable property owned by, or taxed to resident tax payers of said town, as near as deponent has been able to compute the same; and which deponent verily believes to be correct.

Deponent further says, that the persons named in the annexed affidavits, put down as owners, occupants, tax payers, executors, &c. were at the time of subscribing, actual resident tax payers of the said town, as deponent verily believes, except J. H. Rushmore, executor, &c. of Thomas Rushmore deceased, and further deponent says not.

N. C. JENKINS.

Sworn before me this 14th
  day of May, 1862.
      JOHN W. HEAD, *Justice of the Peace.*

SCHENECTADY COUNTY, ss.:

*Nathaniel Jenkins,* above named commissioner, being duly sworn, says : That the aggregate amount of the last assessment roll of said town (1861) of the property, real and personal, taxed or assessed to resident tax payers, is eight hundred fifty-one thousand five hundred and fifty dollars, and further deponent says not.

NATHANIEL C. JENKINS.

Sworn before me this 15th
  day of May, 1862.
      ALONZO MACUMBER, *Justice of the Peace.*"
Indorsed, "Filed May 15, 1862."

It was further admitted by the counsel of the respective parties, that the persons named in the affidavits filed as aforesaid, did not form the majority of the resident tax payers, their heirs or legal representatives, residing in said town, representing a majority of the taxable property of the town of Duanesburgh owned by, or taxed to, resident tax payers, appearing upon the assessment roll of that town for the year 1861, but did form a majority of such tax payers and taxable property, as appears upon the assessment roll of 1855.

It was further admitted by the counsel for the respective parties, that the stock of the Albany and Susquehanna Railroad Company, in May, 1862, did not have, and since has not had any established market value, but sells from fifteen to twenty-five cents upon the dollar, and that the property of the railroad company is heavily mortgaged.

It was further admitted that this action was commenced on the 21st day of June, 1862.

It was further proved, under objection, that in September, 1863, ten miles of the Albany and Susquehanna railroad had been constructed in said town, and was now in operation; that the whole amount of said bonds were delivered to the railroad company by Jenkins, before the commencement of this action, and received in payment of stock subscription made by said Jenkins as commissioner for said town ; that about $15,000 of said bonds, which were negotiable, were sold before the commencement of this action ; that a preliminary injunction was granted restraining the defendants from disposing of said bonds ; that it was afterwards vacated at special term, and that the balance of said bonds were sold within a month after such vacatur ; that the railroad company did not now own any of said bonds, but that said bonds were in the hands of purchasers for value; that an appeal was taken from said order of the special term, vacating the order of injunction, and the same reversed, and the injunction continued.

On the trial, the plaintiff introduced and read in evidence

the acts of the legislature entitled "An act to authorize any town in the county of Schenectady, &c. to subscribe to the capital stock of the Albany and Susquehanna Railroad Company," passed March 31, 1856; also an act amending the same, passed April 14, 1857; and also an act entitled "An act to increase the capital stock of the Albany and Susquehanna Railroad Company; and to regulate the manner and payment of town subscriptions to the stock of said company," passed April 16, 1859.

The defendant then offered and read in evidence, under objection and exception, "An act amending the several acts authorizing town subscriptions to the stock of the Albany and Susquehanna Railroad Company, to extend the time for the completion of said road, and to regulate the weight of the iron rail to be used thereon," passed March 4, 1863; also another act entitled "An act to facilitate the construction of the Albany and Susquehanna railroad," passed April 3, 1863; also another act entitled "An act amending chap. 18 of the Laws of 1863, in relation to the town subscriptions to the stock of the Albany and Susquehanna Railroad Company," passed April 25, 1864.

The parts of said several acts material to this case are as follows:

The original act passed in 1856, provides, in sections one and two, that on the application in writing of twelve or more freeholders, residents of any town, in the counties designated, it should be the duty of the county judge of the county where such such town was situate, to appoint, &c. not more than three freeholders, residents of said town, commissioners to carry into effect the purposes of said act; that it should be lawful for said commissioners to borrow on the faith and credit of such towns; provided the consent in writing of *two thirds of the tax payers*, representing *two thirds of the taxable property* of said town appearing upon the last assessment roll, should be first obtained, proof of which should be by affidavit of one of said commissioners, filed in the clerks'

offices of the town and county; any sum not exceeding $100,000 dollars, &c. and to execute bonds therefor under their hands and seals." The third section authorized such towns to become stockholders of said company, with all the rights and privileges and subject to all the liabilities as individual stockholders.

The act of 1857, amended the first, second, third, fourth and sixth sections of the said act of 1856. The part material to this case is the second section, which was made to read, "It shall be lawful for said commissioners to borrow, on the faith and credit of such town, provided the consent in writing of a majority of the tax payers, their heirs or legal representatives, representing a majority of the taxable property in said town, appearing upon the last assessment roll, shall be first obtained, proof of which shall be by affidavit filed in the town and county clerks' offices, any sum not exceeding $100,000, for a term not exceeding twenty-five years, at not exceeding seven per cent, and to execute bonds therefor, under their hands and seals ; the bonds may be in such sums and payable at such times and places, not exceeding twenty-years, and in such forms as said commissioners may deem expedient ; and in case the said consent in whole or in part shall have been obtained under the assessment rolls of the years 1855 or 1856, the same may be used and completed with the like effect, and shall be as valid as if obtained under the last assessment rolls next preceding the said subscription, provided the consents subscribed shall represent a majority in amount of the said last assessment roll,"

The second, sixth and seventh sections of the act of 1859, the only ones material to the questions arising in this case, are as follows: "*Sec. 2. Any town now authorized* to subscribe to the capital stock of said company, *whenever the proofs shall have been filed* in the clerks' offices *of the consent*, in writing, of a majority of tax payers, their heirs or legal representatives, representing a majority of the taxable property of said town, in pursuance of an act passed March

31, 1856, as amended April, 14, 1857, authorizing a subscription by the commissioners in the corporate name of the
town to the capital stock of said company, such subscription
shall be made by the commissioners *for the amount the tax
payers shall consent,* not exceeding $100,000, in the same
manner as individual subscribers; and the said commissioners are hereby authorized and required to issue the bonds
authorized by said act, in payment at par of the stock so
subscribed," &c.   "*Sec.* 6. All bonds issued by the commissioners of the several towns shall be valid and binding upon
the town represented by such commissioners *in the hands of
bona fide holders or owners thereof;* and in case of any
error, fraud or willful violation of duty, on the part of any
commissioner in the issue of such bonds, the town shall have
redress for the injury, against such commissioner on his official bond, to the extent provided therein; but no commissioner shall be personally liable when he shall act in good
faith in the discharge of his official duties."   "*Sec.* 7. *In
case a majority of the resident tax payers,* their heirs or
legal representatives, *have consented,* or shall consent, in the
manner provided in said act, residing within any such town,
representing a majority of the taxable property owned by, or
taxed to, resident tax payers of said town, the said commissioners shall make a subscription to the stock of said company, for the amount the tax payers have consented, or shall
consent, and issue the bonds of the town in the manner and
for the purposes now provided by said act."

The first section of the amendment, passed, March 4, 1863,
is as follows: "In any case when the commissioner of any
town, *authorized to subscribe* to the stock of the Albany
and Susquehanna Railroad Company shall have filed in the
town and county clerks' offices proof by affidavit of the consent of a majority of the tax payers, their heirs or legal representatives, of such town, preliminary to a subscription on
behalf of said town to the stock of said company, such proof
by affidavit shall be valid and conclusive to authorize said

subscription to the stock and the issue of bonds to the amount specified in such proof; and any clerical or other defect in such proof by affidavit shall not invalidate it."

The amendment of April 25, 1864, reads as follows: "Sec. 1. In any case when the commissioner of any town, *authorized to subscribe* to the stock of the Albany and Susquehanna Railroad Company, shall have filed in the town and county clerks' offices affidavits of the consent, subscribed, or authorized to be subscribed, of a majority of the tax-payers, their heirs, or legal representatives, of such town, respectively, preliminary to a subscription on behalf of such town to the stock of said company, such affidavits, shall be valid and conclusive proof, in all courts and for all purposes, to authorize and uphold the respective subscriptions to the stock, and the issue of bonds to the amount specified in such proof, for such towns respectively ; and no clerical, or other defects in any of such affidavits, shall invalidate such proof, or the subscription to the stock, or to the said bonds. And where bonds have been issued by the commissioner of any town, and the said railroad shall have been constructed through such town, the bonds shall be valid and binding on said town, without reference to the form or sufficiency of such affidavits, and the principal and interest on the bonds shall be levied, raised and paid in the manner provided in the original act."

The findings of fact were as follows:

*1st.* That on the 15th day of May, 1862, the defendant Jenkins, commissioner of Duanesburgh, under the act hereinafter mentioned, filed in the offices of the clerks of said town and county affidavits of the *consent of the tax payers of the town of Duanesburgh* to a subscription on behalf of said town to $30,000 of the stock of the Albany and Susquehanna Railroad Company.

*2d.* That such affidavits showed that tax payers of said town, representing a majority of the taxable property upon the assessment roll of said town in the year 1855, assessed

to resident tax payers, had given their consent to such subscription; but such affidavits did not show that the tax payers of said town, representing a majority of the taxable property assessed to resident tax payers of said town upon the assesment roll for 1861, had given such consent; but that a majority of the tax payers for 1861 had not given their consent to such subscription.

*3d.* That after filing said affidavits, and on May 15, 1862, said Jenkins, as such commissioner, subscribed for $30,000 of the stock of said company on behalf of said town, claiming to act pursuant to an act authorizing towns to subscribe for the stock of said road, passed March 31, 1856, and the acts amending the same; and he then issued and delivered to said company bonds of said town to the amount of $30,000.

*4th.* That before the commencement of this action, said company had sold $15,000 worth of said bonds, at their par value, to *bona fide* purchasers thereof; and that after the commencement of this action said company sold the residue, at par value, to *bona fide* purchasers thereof.

*5th.* That at the time of such subscription, the stock of said company had not any established market value, but could have been sold at from fifteen to twenty-five cents on the dollar.

*6th.* That in the year 1863 said railroad company constructed its road through said town, in conformity with said acts.

### Conclusions of Law.

I. That no corporate right, property or interest of the plaintiff, had been, or can be, affected by the acts of the defendants, or either of them, alleged in the complaint to have been done or threatened.

II. That by virtue of chapter 18 of the Laws of 1863, and chapter 402 of the Laws of 1864 amending the first mentioned act, the said company having constructed its road through said town of Duanesburgh, the said bonds are

Town of Duanesburgh *v.* Jenkins.

valid and binding upon said town, without reference to the form or sufficiency of such affidavits."

*J. S. Landon,* for the plaintiffs.

*J. H. Ramsey* and *Henry Smith,* for the defendants.

*By the Court,* JAMES, J. The Albany and Susquehanna Railroad Company was organized under the general railroad act, for the purpose of constructing a road from Albany to Binghamton. Its stock not attracting capitalists or local subscriptions sufficient for the construction of the road, its promoters sought aid from towns along its route, and for that purpose, in 1856, procured the passage of the statute above set forth. From its numerous amendments it is inferred that the local tax payers saw fit to withhold their consents; at all events, it is certain that the requisite number of tax payers in the town of Duanesburgh did not respond, and that the requisite proofs to bind the town could not be made. It seems, however, that affidavits were made and filed; not such as the law required, or such as would bind the town, but under color of which a commissioner assumed to act and subscribe for stock in the name of the town, and to issue its bonds therefor.

To subscribe for railroad stock, or to purchase stock, and become a member of a corporation, and issue its bonds therefor, is not one of the general powers possessed by towns. Before a town can become bound by persons assuming to act as its officers for such purpose, the authority for such action must have been conferred by the legislature and accepted by the town. That such power may be conferred has been adjudged. (*Bank of Rome* v. *Village of Rome,* 18 *N. Y. Rep.* 38. *Starin* v. *Town of Genoa,* 23 *id.* 439.) And when conferred, and accepted by the town, it may be exercised by officers or commissioners, as shall be specified by the act. But acceptance by the town can not be forced. A town

can not, by mere legislative enactment, be compelled, to sub-scribe for the stock of a private corporation, or to issue its bonds in payment for such subscription, any more than can an individual. (*Clarke* v. *City of Rochester,* 24 *Barb.* 474. *Willcocks on Mu. Corp.* 30. *Bailey* v. *The Mayor of New York,* 3 *Hill,* 543. *The King* v. *Pasmore,* 3 *Durn. and East,* 240. *Angell and Ames on Corp.* 7th *ed.* § 84.) The authority to grant the power, and declare the mode of acceptance, is with the legislature ; but the option of accept-ance is with the town.

In the case under consideration, the power to subscribe for the stock of said railroad company and issue bonds in pay-ment, was offered to the town ; but until accepted in the mode specified by the act, it had no vitality. The mode of acceptance was by the written consent of a majority of the tax payers, and a consent in that form was a condition pre-cedent to vitality in the power. It was proper to appoint a commissioner at any time, if applied for by twelve freeholders, to operate the act if accepted ; but such appointment was not an acceptance of the power.

One of the findings in this case reads as follows : "In May, 1862, the commissioner filed in the town and county clerks' offices, affidavits of the consent of the tax payers of the town of Duanesburgh, to a subscription on behalf of said town to the stock of the Albany and Susquehanna Railroad Company to the amount of $30,000." I do not understand exactly what was meant by this finding. If, by it was meant that the consent of all, or a majority, of the tax payers of the town had been filed, it is not sustained by the proofs. The act of 1856 required the assent of two thirds of the tax payers according to the tax roll of the preceding year. No such assents were ever obtained ; but, in the effort to obtain them, the assent of a majority on the roll of 1855 was obtained. In 1857 the law was so modified as to allow accept-ance by a majority, according to the last assessment roll ; but no such assents were ever obtained ; and we infer they

could not be, from the fact that after five years delay, acceptance was sought to be forced by legislative enactment. The law was first invoked in that behalf. It was claimed that the consents under the act of 1856, being a majority according to the assessment roll of 1855, were, by the amendment of 1857, made an acceptance, and. might be acted upon in 1862. The court did not approve such construction, nor do we understand the act of 1857 as intending any such effects.

When this case was before us on appeal from an order of the special term dissolving an injunction, (*see* 40 *Barb.* 574,) we took occasion to say : "if the phrase '*last assessment roll,*' in the original act, had reference to the roll next preceding the passage of the act, then the roll of 1855 was meant, because the act was passed on the 31st of March, 1856. If that phrase in the original act had reference to the roll next preceding its passage, it must be held to have the same reference when used in the amended act, which would then mean the roll of 1856, as the amendment was passed in April, 1857. It is true the act of 1857 declares that 'the second section of said act is hereby amended and shall read as follows ;' still, such amendment not being made to correct an error in the former act, does not relate back and take effect from the passage of the original act, but only changes the original act from the passage of the amendment. (*Ely* v. *Holton,* 15 *N. Y. Rep.* 595, 598.) And the legislature having by special words provided that the doings under the original act might be made available under the amended act,. have in substance declared that they did not intend the amendment should have effect anterior to its passage." And. this court on that occasion further held, that "the term 'the last assessment roll,' as used in both statutes, had reference, not to the passage of said acts, or either of them, but to the roll preceding acceptance." These views are still entertained.

It therefore follows, that as the several acts of legislation tendering to towns the right to issue bonds and subscribe

for the stock of this road, had not been accepted by this plaintiff, all action in that matter, in its name, was without authority and void.

But the defendant Jenkins, notwithstanding, had assumed to act in the name of the town; he had subscribed for stock and issued its bonds in payment therefor. Some of the bonds had passed to third persons for value, and some remained with the defendants, when this action was commenced. It is clearly apparent that subsequent legislation was intended by the managers, to legalize these acts of the commissioner. But the legislature could not do indirectly what it had not the power to do directly. The legislature, we repeat, could not compel a municipal corporation to become a stockholder in a private corporation, nor compel it to use its property to pay for such stock; or, what is the same thing, issue its bonds in payment. It would be monstrous to establish such a doctrine, and a gross outrage upon a town and its citizens to enforce it. It would be depriving the town of its property without its assent, and without due process of law. A municipal corporation is absolutely as much entitled to have its liabilities determined by due process of law as an individual. It is so guarantied by the constitution. (*Art.* 1, §§ 6, 7,) and any legislation in disregard of that right is usurpation. (*Baldwin* v. *The Mayor of New York,* 42 *Barb.* 549.) The power of the legislature, to pass a law, to raise money by tax, from towns, counties or state to pay for services rendered, injuries sustained, or wrongs inflicted, and direct the application, is not disputed. (*Town of Guilford* v. *Sup. of Chenango,* 3 *Kern.* 143.) But there are some things a state legislature can not do, even though not restrained by a constitution. As Judge Chase said, in *Calder* v. *Bull,* (3 *Dallas,* 386, "The nature and end of legislative power will limit its exercise. This fundamental principle flows from the very nature of our free republican institutions. There are acts which the federal and state legislatures can not do without exceeding their authority.

There are certain vital principles which will determine and overrule an apparent and flagrant abuse of legislative power; such as to authorize manifest injustice by positive law, or to take away that security for personal liberty, or private property, for the protection whereof government was established."

But it is, perhaps, unnecessary to discuss this question, because we think it does not arise in the case; nor have we to do with the motive which procured such legislation. Our duty is with the statute, and if found within legislative power, and constitutional, to give it construction.

After a careful examination of each of the several statutes above cited, we think the subscription for stock and issue of bonds of and for the town, by Jenkins as commissioner, were without authority at the time made, and that they have not been legalized or validated by subsequent legislation; that whatever the intention of the promoters of the scheme of town subscriptions, the legislature has not assumed to deprive the towns of the option of accepting or rejecting the power to take stock and issue its bonds therefor. That body only assumed to cast its broad mantle over acts authorized to be done. The language of each statute is this: "in any case where the commissioner of any town *authorized to subscribe* to the stock of the Albany and Susquehanna Railroad Company, shall have filed in the clerks' offices affidavits," &c. "such proof by affidavits shall be valid and conclusive to authorize the subscription to stock and the issue of bonds, notwithstanding any clerical or other defect in such proof by affidavit." It is only in cases where the commissioners appointed for a town had authority to act for such town, that those statutes have application. In such cases their propriety is not questioned. In cases where the power had been accepted, the consents in fact given, and under actual authority stock had been subscribed for, and bonds issued, it would be unjust to allow the town to escape liability because of any clerical or other defects in the affidavits or proof of authority filed. The power to cure such defects by legisla-

tion is undoubted. This, in all probability, was what the legislature intended to do, and it did nothing more. It did not enact, or assume or intend to enact, that any affidavits which a commissioner might have filed should be valid and conclusive proof to uphold subscriptions and legalize bonds, without regard to their contents, and whether the consents of the tax payers had been given or not.

When this case was formerly before us, we laid down certain principles applicable to the facts then appearing, to which we still adhere, which we think should have controlled the case at circuit; one of which was that this action could be maintained by the town of Duanesburgh. We have been unable to perceive that on this point the facts were changed on the trial.

In addition to the opinion of Justice POTTER, heretofore adopted, it is proper to say, a town may sue and be sued in all controversies between it and others; (18 *N. Y. Rep.* 155, 157; 1 *R. S. 5th ed.* 813, 836;) and in all litigation must sue and be sued by its name, except where officers are specially authorized by law to sue in their name of office, for its benefit. (1 *R. S. 5th ed.* 836.) By the acts of these defendants this town stands on the books of said railroad corporation as a stockholder, *prima facie* personally liable to all the responsibilities as such, (*act of* 1857,) such as its debts to laborers and servants. (*Gen. Railroad Act*, § 10.) Bonds issued in the name of the town have been sold to third persons for value; the act of 1859, in its sixth section, says, qualified by the condition of the second section, that "all bonds issued by the commissioners of the several towns shall be binding upon the town, &c. in the hands of *bona fide* holders and owners," &c. and hence here was a color of liability against this town. Under this color of liability the town is subject to suit; in its corporate capacity it might be put to the trouble and costs of defense; if it did not defend its corporate property would be made liable to satisfy any judgment recovered. So if the town acquiesced, it might be

Town of Duanesburgh *v.* Jenkins.

held estopped from interposing a want of authority in Jenkins as a defense to any action brought against it, either by an employee of the railroad or by a *bona fide* holder of said bonds. Of the effect of the statute of 1859, respecting *bona fide* holders of bonds, it is not necessary to speak, because the defendants are not in a position to raise that question. Probably enough has been said to indicate the views entertained.

The second conclusion of law was "that by virtue of the act, (*chapter* 18 *of the Laws of* 1863, *and chapter* 402 *of the Laws of* 1864,) amending the first mentioned act, the said company having constructed its road through said town of Duanesburgh, the said bonds are valid and binding upon said town, without reference to the form or sufficiency of such affidavits," &c. The judgment below seems to have been placed mainly upon this ground, and if authority in fact existed to issue bonds, the conclusion would be right; but as no such authority existed, the statutes of 1863 and 1864 have no application, and for that reason the judgment is erroneous.

Again; it was not only not shown that Jenkins had authority to subscribe for stock and issue bonds, under the statutes of 1856 and 1857, but it affirmatively appeared that he did not have such authority; that the consents of tax payers had never been given. It was only claimed that his usurpation had been legalized and made binding on the town by legislative enactment. The acts of 1856 and 1857 have never been repealed, either directly or by implication; the acts of 1863 and 1864 did not assume to repeal the conditions precedent imposed by the act of 1856, modified by that of 1857, or to invest the town with power, or its commissioner with authority, to act without the assent therein required. We repeat; both the statutes of 1863 and 1864 were predicated on the condition that the power and authority had been accepted and given by the town and its tax payers, and on that theory they were enacted, to meet any objections that might be made

Town of Duanesburgh *v.* Jenkins.

to the affidavits on file by reason of formal, clerical and other defects of like character; it was not assumed to change the fact, or supply a want of authority; or to declare the bonds valid, whether the commissioner had authority to issue them or not.

For the reason that a town can not legally take stock in a railroad corporation, nor issue its bonds therefor, without authority from the law making power, duly accepted by the town; and for the reason that the act of authorization had never been accepted by this town, nor the conditions precedent which authorized the commissioner to subscribe for stock and issue bonds complied with; we hold that the defendant Jenkins was not the agent of the town, nor authorized to act for it, or on its behalf in the premises; that his subscription for stock and issue of bonds in the name of the town were unauthorized acts, and wholly void; and that no subsequent statute has legalized either, or made the bonds valid or obligatory on the town; or could legalize or make them binding. That the plaintiff was entitled to judgment upon the facts of the case, declaring such subscription and issue of bonds void; that Jenkins forthwith return the certificates of stock to such railroad company, and that said railroad company strike the name of said town from its stock book; that Jenkins be restrained from subscribing for other stock or issuing other bonds in the name of said town; that both defendants be restrained from selling, assigning or transferring any of the said bonds heretofore issued, and that the plaintiff recover such damages as shall have been sustained by reason of the unauthorized acts of the defendants.

Judgment reversed, new trial granted, costs to abide the event.

[SARATOGA GENERAL TERM, July 10, 1866. *Bockes, James, Rosekrans,* and *Potter,* Justices.]