CHARLES HECKMANN, Respondent, v. JOHN M. PINKNEY, Impleaded, etc., Appellant.

A literal performance of a building contract in every detail is not a condition precedent to the right of the contractor to require payment.

By the terms of a contract between defendants P. and G., the latter agreed to make certain repairs and alterations upon the premises of the former, the work to be completed in two months. G. leased certain other premises of P., and it was agreed that the rent falling due before the completion of the contract was to be credited upon the contract price. In an action by a sub-contractor to foreclose a mechanic's lien it appeared that the contract was not performed within the time, but the referee found that it was substantially performed before the commencement of the action, and that defendant had waived performance as to the items wherein there was not perfect performance. *Held*, that the failure to perform was no defense.

The referee allowed defendant the rent falling due up to the time of the commencement of the action. *Held*, no error; that for the purpose of the action the contract must be treated as then performed.

The mechanic's lien law for the city of New York, of 1863 (chap. 500, Laws of 1863), was repealed by the law of 1875 (chap. 379, Laws of 1875).

Where a later statute, not purporting to amend a former one upon the same subject, covers the whole subject, and was plainly intended to furnish the whole law thereon, the former statute will be held to be repealed by necessary implication, although the later statute contains no repealing clause.

The said act of 1875 gives to a sub-contractor a lien, and the words "liable to pay at the time," in the provision thereof, providing that the aggregate amount of liens "must not exceed the amount which the owner would be *otherwise liable to pay at the time* of the filing of the claim," etc., do not necessarily mean a liability which can then be enforced, but mean liability to pay by virtue of, and according to the terms of the contract, either presently or *in futuro*. The clause was intended to limit the owner's liability in the aggregate to the amount which he has contracted to pay, deducting payments made before the filing of the lien.

(Submitted April 19, 1880; decided June 1, 1880.)

APPEAL from judgment of the General Term of the Court of Common Pleas, in and for the city and county of New York, affirming a judgment in favor of plaintiff, entered upon the report of a referee. (Reported below, 8 Daly, 466.)

The nature of the action and the facts appear sufficiently in the opinion.

*G. M. Thompson* for appellant. A substantial compliance by a contractor with the terms of a contract is not sufficient, when the work is conceded to be incomplete. (*Tompkins* v. *Dudley*, 25 N. Y. 273.) Even if the contractor has been induced by the owner to omit performance within the time limited, he would be required to complete the contract with due diligence. (*Green* v. *Hains*, 1 Hilton, 254; *Leslie* v. *Knickerbocker Life Ins. Co.*, 63 N. Y. 27; *Wallman* v. *Society of Concord*, 45 id. 485; *Sinclair* v. *Tallmage*, 35 Barb. 602, 607; *Reed* v. *Board of Education*, 3 Keyes, 105; *Ruff* v. *Rinaldo*, 55 N. Y. 664.) There was no such waiver as would deprive defendant of his right to damages. (*Ruff* v. *Rinaldo*, 55 N. Y. 664; *Sinclair* v. *Tallmage*, 35 Barb. 602.) Statutes giving liens must be construed according to the language employed, and where no ambiguity exists, courts cannot correct supposed defects. (*Mushlitt* v. *Silverman*,      N. Y. 360; *Benton* v. *Wickwire*, 54 id. 276.)

*Alfred Erbe* for respondent. The act of 1875 superseded the act of 1863, and all prior acts on the subject *in toto* by necessary implication. (*Diossy* v. *Martin*, Daily Reg., March 16, 1876; *Burbridge* v. *Marcy*, Daily Reg., March 5, 1878; *Dexter & Limerick Plankroad Co.* v. *Allen*, 16 Barb. 15; Potter's Dwarris on Stat. 157, and note; *Davies* v. *Fairburn*, 3 How. [U. S.] 636; *Norris* v. *Croker*, 13 id. 429.) Before an owner can claim that a contract was forfeited, he must show that in some way he claimed the forfeiture, and thus distinctly put the contractor in default. (*Wheeler* v. *Schofield*, 67 N. Y. 311, 314; *Gallagher* v. *Nicholls*, 60 id. 438, 448; *Sinclair* v. *Tallmage*, 35 Barb. 602, 606.) Literal performance in every detail, according to the specifications, is not required in building contracts. Substantial performance is sufficient to sustain the lien. (*Glacius* v. *Black*, 50 N. Y. 149; *S. C.*, 67 id. 563, 566, 568; *Sinclair* v. *Tallmage*, 35 Barb. 602, 604.) The claim for $2,000 unliquidated damages, on

account of non-performance within the two months originally stipulated, is inadmissible, because Pinkney waived the element of time in performing the contract, and did not set up such claim, or any claim for damages in his answer, and failed to specify said alleged damages of $2,000 for pretended loss of rent. (*Schuyler* v. *Hayward*, 67 N. Y. 253, 258, 259.)

EARL, J. This is an action to foreclose a mechanic's lien under the act chapter 379 of the Laws of 1875. The defendant was the owner of the premises situate in the city of New York, against which it is sought to enforce the lien, and in June, 1876, he contracted with one Gessner to make certain alterations and repairs in and additions to such premises, for which he agreed to pay him the sum of $5,000. At the time of making the contract, Gessner occupied certain premises of defendant under a lease, and the rent which should fall due for such premises before the completion of the contract, was to be credited to the defendant upon the contract price. The contract was to be performed within two months, according to certain plans and specifications, and it was agreed that in case Gessner failed to perform his contract within the time specified, the defendant should be released from the contract. Gessner employed the plaintiff to do the carpenter's work required by his contract, and it was for the work thus performed that plaintiff claims the lien which he is seeking to enforce.

The defendant bases his defense upon several grounds, which I will separately examine.

First. The defendant alleges that Gessner failed to perform his contract. The referee found that Gessner did not make cornices and put centerpieces in certain of the rooms in the house, as he had agreed to, and that the material used for deafening the floors did not contain hair, as required by the contract, and that one of the lintels was cracked and had not been replaced by a whole one; but he also found that the contract was substantially performed, and that in the matters complained of, performance had been waived. We have carefully scrutinized the evidence in reference to these matters, and we

cannot say that the findings of the referee have no evidence to sustain them. There was no willful refusal by Gessner to perform his contract, and a literal performance thereof in every detail was not a condition precedent to payment by defendant. (*Glacius* v. *Black*, 50 N. Y. 145; *S. C.*, 67 id. 563; *Woodward* v. *Fuller*,* in this court, not reported.)

The defendant might have been entitled to an allowance on account of the defective performance, if he had proved and claimed what it would have cost to complete the contract strictly according to its terms; but he did not give such proof, and hence there was no basis for such allowance.

The contract was not performed within the two months · specified, but the referee found that performance within that time was waived by the defendant, and we cannot say that such waiver could not be inferred from the facts. The defendant did not allege, in his answer that he had sustained any damage by the failure of Gessner to perform his contract within the two months, and he gave no satisfactory proof that he had sustained such damage. All the evidence on the subject was the simple statement of the defendant, as a witness, that he "suffered damages by reason of the non-completion of the contract, in loss of rents of over $2,000." Under the answer as it was, and upon this evidence, general, uncertain, unsupported by any facts, we cannot say that the referee erred in refusing to find that the defendant suffered damage from the delay to any specified amount.

*Second.* The defendant was entitled to be credited for the rent due him from Gessner to the time of the completion of the contract; and as Gessner did not in every particular complete the contract before the trial of the action, the defendant's claim is that he was entitled to be credited for all the rent due to the time of the trial. But as the referee found that Gessner had substantially completed the contract before the commencement of the action, and that the defendant had waived performance as to the few particulars in which there was not perfect performance, the referee did not err in confining the

---

*80 N. Y. 312.

allowance of rent to the defendant to so much as was due at the commencement of the action. For the purposes of this action, the contract must be treated as then performed.

Third. Section 11 of the act chapter 500 of the Laws of 1863, provided that "liens shall in all cases cease after one year, unless by order of court the lien is continued and a new docket made stating such fact;" and it is undisputed that there was no such order of the court. The defendant, therefore, claims that this lien was discharged. His claim is that section 11 is still in force, notwithstanding chapter 379 of the Laws of 1875. In this, I cannot doubt, he is mistaken. The act of 1875 takes the place of and supersedes the act of 1863. It covers the whole subject of liens in the city of New York, and provides a complete scheme for creating and enforcing them. It does not in terms repeal the former act, but it was the manifest purpose of the legislature that it should have that effect. It does not purport to be an amendment of the former act. Section 11 of that act was intended to put a limit to liens, so that the owner could not be embarrassed by their long continuance. Section 8 of the act of 1875 accomplishes the same purpose, by providing that "no lien provided for in this act shall bind the property therein described for a longer period than ninety days after the claim has been filed, unless an action be commenced within that time to enforce the same, and a notice of the pendency of such action filed with the clerk of the county, and an entry of the fact of such notice made on the lien docket;" and section 18 contains particular provisions as to the manner in which liens may be discharged. It is the undoubted rule that repeals by implication are not favored. Where there is no repealing clause in a later statute, and that and a former one can stand together, and both have effect, they will generally both be held to be in force. But where a later statute, not purporting to amend a former one, covers the whole subject, and was plainly intended to furnish the only law upon the subject, the former statute must be held repealed by necessary implication. (*Farr* v. *Brackett*, 30 Vt. 344; *Wakefield* v. *Phelps*, 37 N. H. 295; *D. and L. Plankroad*

*Co.* v. *Allen,* 16 Barb. 15; *Daviess* v. *Fairbairn,* 3 How. [U. S.] 636; *Norris* v. *Crocker,* 13 id. 429. When the legislature was perfecting a lien system for the city of New York, providing minutely and particularly for the whole subject, if it had intended that the provision contained in section 11 of the act of 1863 should remain in force as a part of the system, it would have incorporated it, as it did other provisions of that act, in the act of 1875.

Fourth. It is claimed that the act of 1875 does not give a subcontractor a lien. It is true that section one of the act, which gives the lien, does not in terms mention a sub-contractor. The whole act is singularly imperfect, obscure and bungling; but we must, looking at all the language used, the purposes to be accomplished, and other acts *in pari materia,* arrive, as well as we can, at the intention of the legislature. Section 1 provides that " every person performing labor or furnishing materials to be used in the construction, alteration or repair of any building, etc., shall have a lien upon the same for the work or labor done or materials furnished by each respectively, whether done or furnished at the instance of the owner of the building or other improvement, or his agent." The general purpose of this section is to give every person who furnishes labor or materials a lien. The statute is intended for the protection of mechanics and material men, who furnish labor and materials for the improvement of real estate. There is no more apparent reason for thus protecting an original contractor with the owner than for protecting any other person who lawfully furnishes work or materials for the same improvement. It is not a necessary construction of the language used that the labor and materials must have been furnished at the instance of the owner or his agent. But if it should so be held, labor and materials furnished by a sub-contractor may, in a very general and broad sense, be said to be furnished at the instance of the owner, who set the improvement on foot, and contracted to pay for the same. Other sections of the act show that the language used in section 1 was intended to include sub-contractors Section 5 provides that " every original contractor, within

sixty days after the completion of his contract, and every person, save the original contractor, claiming the benefit of this act, must, within thirty days, etc., file with the county clerk of the county a claim containing the names and residence of all the claimants, and a statement of the demand, etc., with the name of the owner, or reputed owner, if known, and also the name of the person by whom he was employed, or to whom he furnished the materials," etc. Section 14 provides that " all persons entitled to liens on the structure or improvement, except those who contracted with the owner thereof, shall be deemed sub-contractors; and the court in the judgment shall direct the amount due sub-contractors to be paid out of the proceeds of sales before any part of such proceeds are paid to the contractor." The prior law — that of 1863 — gave sub-contractors liens, and it cannot be supposed that the legislature, by the act of 1875, meant to deprive such persons of their liens, particularly as all the other lien acts in this State, and, so far as I can ascertain, in all the other States, give them liens equally with original contractors. All these considerations lead us to the conclusion that the plaintiff was a person who could have a lien under the act of 1875.

Fifth. The further claim is that plaintiff's lien was inoperative, for the reason that at the time he filed the same, there was nothing actually payable to Gessner from the defendant; and this claim is based upon the concluding clause of section 1 of the act, which provides that " the aggregate amount of such liens must not exceed the amount which the owner would be otherwise liable to pay at the time of the filing of the claim prescribed by section 5 of this act." No portion of the $5,000, stipulated in the contract between defendant and Gessner, was payable at the time the lien was filed; but a large portion of it had then been earned. We think the sole purpose of the clause quoted was to limit the liability of the owner in the aggregate to the amount which he had contracted to pay, after deducting such payments as he had made before the filing of the lien. The words " liable to pay at the time" mean liability to pay by virtue of his contract, according to its

terms, either presently or *in futuro.* They do not·necessarily mean a liability which can then be enforced. If such a meaning could be imputed to them, the purpose of the statute would in many cases be entirely defeated, as no notice of lien could be operative unless some payment from the owner was due, no matter how much of the contract price was then earned and actually unpaid. It cannot be supposed that such a departure from the law of 1863, and all the other lien laws in force in this State was intended. The construction contended for would be in conflict with the uniform policy of the law as evinced in other statutes *in pari materia.*

I have thus examined all the allegations of error, and conclude that the judgment should be affirmed.

All concur.

Judgment affirmed.