JOHN B. CORNELL AND JOHN M. CORNELL, APPELLANTS, v. ASHBEL H. BARNEY, FREDERICK W. SALEM AND OTHERS, RESPONDENTS.

*Mechanics' lien law — when a lessor is not liable for improvements made by the lessee, as required by the lease — Chap. 379 of 1875.*

The defendant Barney leased certain land in the city of New York owned by him to one Salem for the term of fifteen years, Salem agreeing to pay the rent, as provided in the lease, and to build or cause to be built a building thereon, to be worth at least $50,000, Barney agreeing to loan and advance to him, to aid him in so doing, the sum of $25,000, upon its appearing that an amount equal to that to be loaned had been expended in the erection of the building. The lease, which was duly recorded, provided for its renewal upon its expiration, and also declared that in case the tenant failed to perform the covenants and agreements thereof, the term should cease and the buildings, fixtures, etc., should revert to and become absolutely the property and estate of Barney.

This action was brought by the plaintiffs, who had, in pursuance of a contract made with Salem, furnished material and performed labor in erecting the building, to enforce as against Barney a mechanics' lien, filed under chapter 379 of the Laws of 1875.

*Held*, that as the lease was recorded the plaintiffs were chargeable with knowledge of its contents.

That the debt had not been created at the instance of Barney, or of his agent, nor had he caused the building to be erected or the improvement to be made within the meaning of the act, and that the plaintiff had acquired no lien upon his interest in the land.

That Salem having failed to comply with the terms of the lease and perform his contract, the building, so far as completed, reverted to Barney, free from liability for the plaintiffs' claim.

Appeal from a judgment in favor of the defendants, entered upon the trial of this action by the court without a jury.

*Samuel Skidmore*, for the appellants.

*Edward Patterson*, for the respondents.

Daniels, J.:

The action was brought to foreclose a mechanic's lien. The trial resulted in a dismissal of the plaintiffs' complaint. Exceptions were taken to the determination of the court upon which that direction was given, but in neither of them was the point in any form raised that the action should have been maintained against the defendant Salem, who was the contractor with the plaintiffs and under whose contract they furnished the materials, the value of which they endeavored to recover in this action. The exception was taken generally to the whole of the twelfth conclusion adopted by the court. That included not only the determination that the defendant Barney, who was the owner of the property, was not liable in the case, but in addition to that also the direction that the complaint should be dismissed so far as it was against Salem, the contractor, and to succeed upon such an exception the party failing must be able to maintain the proposition that the entire conclusion made the subject of the exception was erroneous and unfounded. If the direction given was right as to Barney the exception consequently must fail. A similar difficulty is encountered in considering the exception taken to the refusal of the court to find the conclusion of fact and determinations of law, presented on behalf of the plaintiffs. No particular proposition was excepted to because of the refusal to adopt the views embodied in these proposed findings, but a general exception was filed to the omission of the court, in which it was stated that the plaintiffs separately excepted to the refusal of the court to find each of the conclusions presented for its consideration. It has been often held that such an exception is too general to raise any specific point for consideration, unless all the propositions embodied and referred to are discovered to be erroneous. Such cannot be held to be the result of the omission of the court to find upon the points presented for that purpose, and con-

sequently this very general exception can afford no assistance to the plaintiffs in the case. If the court was right in holding that the action could not be maintained against Barney as the owner of the land, then the plaintiffs must fail in their appeal because of the informalities in the exceptions which have been filed in the case. Whether the proceeding can be sustained against Barney is therefore the important point requiring to be considered in the disposition of the appeal.

The ground upon which it was proposed to charge him by the complaint was that there was an amount due to Salem, the contractor, upon the contract made between them for the improvement of the property. But as that did not appear to be the case upon the trial of the action it was proposed to enforce the claim of the plaintiffs against the property upon the ground that Barney, the owner, had himself procured the improvements to be made.

For the purpose of sustaining that point reliance was placed upon the agreement made between Barney as the owner and Salem as the lessee of the property. This agreement was made in June, 1877, and by its terms Barney leased the property to Salem for the term of fifteen years from the first day of the following month of January at the yearly rent of $4,100, payable in quarterly payments. A further agreement was contained in the lease by which Salem, the tenant, agreed that he would build or cause to be built on the land a good and substantial building to be used as a brewery and to cost and be fully worth the sum of $50,000, and that the same should be finished by the 1st day of January, 1878. For the purpose of aiding and assisting the tenant in the erection of the building Barney agreed to loan and advance to him during the progress of the work the sum of $25,000 upon its being made to appear that an equal amount, to that to be at the time loaned, had been paid and expended by the tenant in the erection of the building. To secure this loan, which was to be made from time to time as the work progressed, a mortgage was finally to be given upon the interest of the tenant in the building. In case the tenant, within the time provided for, caused the building to be erected, then Barney covenanted to renew the lease at the expiration of the fifteen years for a succeeding term of like duration; and other renewals of a similar character were provided for by the terms of the agreement. It was then

declared that in case the tenant should fail or neglect to perform the covenants and agreements to which he had been previously subjected, or any or either of them, then and in that case the term of the tenant in the premises should cease and determine and the buildings, fixtures, etc., should revert to and become absolutely the property and estate of Barney. It appeared in the case that Salem, the tenant, failed to perform that part of the agreement which provided for the erection of the building, and the consequence was that by the express terms of the lease his interest in the land as well as in the building reverted to and became again the property and estate of the landlord.

Barney in no manner contracted either directly or indirectly with the plaintiffs for the materials furnished by them. That was, on the contrary, done by an agreement executed by the tenant under seal to the plaintiffs, and under that agreement the material supplied by them, the value of which they claim to recover in this action, were all delivered. It has been insisted, however, that as Salem, the tenant, had become obligated to Barney, the owner, to erect and build, or cause to be erected and built, this building upon the demised premises, that the owner had subjected his property to a legal liability for the payment of the debt that might be incurred under the provisions of the statute relating to transactions of this character. These provisions are contained in chapter 379 of the Laws of 1875, and they subject the owner to a liability of this nature, where the materials may be furnished at his instance, or at the instance of his agent. (Laws 1875, p. 436, § 1.) What the legislature intended by the use of these terms is further indicated by the third section of the act, in which it is declared that the land upon which the building may be constructed shall be subject to the liens provided for, where it belongs to the person who caused the building to be erected. And these are the only provisions which it appears to be essential to consider for the purpose of disposing of this controverted point in the case.

Under them, to render the property of the owner subject to a lien for the debt, it must be created at his instance or at the instance of his agent, or by causing the building to be erected or the improvement to be made. In this respect the language of the act does not very materially differ from that employed in the one

which it superseded. For by that act the property of the owner became subject to such debts as were made for its improvement, when they were contracted by or in accordance with the directions of the owner or his agents. (Laws 1863, chap. 500, § 1.) And under that act a contract made between the owner and the tenant, containing provisions similar to those included in the agreement made between these parties, was held not to be sufficient to charge the property of the owner with the payment of debts, contracted by the tenant in making the improvements provided for in the lease. (*Knapp* v. *Brown*, 45 N. Y., 207; *Muldoon* v. *Pitt*, 54 N. Y., 269.) While the phraseology of this act has not been literally followed in the enactment of the law of 1875, terms of substantially the same import have been made use of upon this subject. For in judgment of law, and as a matter of construction, the debt could not be contracted at the instance of the owner or his agent without some actual interposition or direction given by one or the other upon that subject. The terms used substantially contemplate the order, direction or request of the owner of the property. Some voluntary act must be performed by himself or his agent, resulting in the delivery of the materials or the contracting of the debt, before the latter can properly be held to have been created at his instance. He must cause the work to be done or the materials to be supplied, and in this case that cannot, in any form, be properly said to have been done, for nothing transpired upon this subject between himself and the plaintiffs. They were induced to furnish the materials solely and wholly on what transpired between themselves and Salem, the tenant. It was he who applied for them, and the contract under which they were delivered was entered into with him and with no other person. And when that was done the plaintiffs were chargeable with notice of all the terms contained in the lease, for it had been recorded before that time.

It was at the instance of Salem, therefore, that the materials were delivered, and he was the person who, in the terms of the law, caused them to be delivered. Under the agreement which was made with him, and inserted in the lease, it was he and he alone who was to erect or cause the building to be erected. The owner of the property assumed no obligation whatever for that purpose; all that he did was to agree to loan the tenant a certain sum of money to be

used by him in defraying the expenses of putting up the building. But neither that circumstance nor the obligation imposed upon the tenant to erect or cause the building to be erected was sufficient to render the owner's property liable for the payment of this debt; for neither of these circumstances, nor both taken together, either caused the materials to be delivered, or established the fact that they had been procured at the instance of the owner or of his agent. For that reason the case was not brought within the terms required by the act of 1875, to be complied with before the property of the owner could be rendered liable for the cost of the materials used in making an improvement upon it of the nature of that agreed to be made by the tenant. The case in this respect differed materially from that of *Otis* v. *Dodd* (24 Hun, 538), which was decided upon the effect of chapter 489 of the Laws of 1873, rendering the land liable for the cost of the labor and materials performed and used in its improvement when that shall be done with the consent of the owner; and from *Burkitt* v. *Harper* (79 N. Y., 273), where the land was rendered liable when its owner permitted it to be built upon, or any building upon it to be repaired, altered or improved. Why this diversity should exist in the statutes of the State concerning transactions of this nature it is not easy to perceive. By chapter 478 of the Laws of 1862, the land of the owner is subjected to liability for debts contracted in making improvements upon it when that shall be permitted by him. But this act includes only the counties of Kings and Queens. And by the act of 1873, as it has been amended by chapter 233 of the Laws of 1875, in all other portions of the State, except New York, Onondaga and Rensselaer and the city of Buffalo, a like liability has been provided when the improvement may be made with the consent of the owner of the property; while in the county of New York to create such a liability it must be caused by the owner, or the debt be created at his instance or that of his agent. There is a plain repugnance in the terms employed in the enactment of these statutes, which should not be expected to be found in laws relating to the same subject-matter, but nevertheless it has been created and it is not in the power of courts of justice to remove it. The act applicable to the city and county of New York is much more restricted in this respect than either of the

others which have been mentioned, and it is as so restricted that the courts' are required to carry it into effect. Under the restrictions the plaintiffs' debt was not a charge upon the property of Barney who owned the land, for it was not created at his instance or that of his agent, neither was the improvement caused to be made by him; that was the voluntary enterprise of the tenant himself; it was he who was to cause it to be accomplished as a consideration for the leasing of the land to him, and the agreement made by its owner to loan him the money mentioned in the lease. This view was elaborated and considered in *Burbridge* v. *Marcy* (54 How., 446), and the same conclusion was adopted as the only one deemed to be consistent with the language made use of in the statute. And upon the authorithy of that case *Holley* v. *Van Dolsen* (55 How., 333), was afterwards decided. The subject was neither directly nor indirectly considered in the case of *Heckmann* v. *Pinkney* (81 N. Y., 211), and the decision then made consequently in no manner indicates what may be a proper disposition to be made of the present controversy. The case of *Moore* v. *Jackson* (49 Cal., 109), has been relied upon as sustaining the proposition that Salem was the agent of Barney in contracting this debt. He surely did not profess to act in that capacity for the contract was made with him alone and on his own account, and as the principal in the transaction, and this case justifies no other construction of what appears to have been done by him, for it was decided under the provisions of a statute rendering the owner of the land liable, who knowing of the improvement being made upon it, failed to post a written notice upon the premises or the improvement itself within three days after he acquired such knowledge, declaring that he would not be responsible for the expenses of the improvement. The owner in this case failed to observe this requirement, and he was held liable because of that failure, and for the additional reason that it was understood that the vendee when he took it intended to improve the property. Under the terms of the statute relating to this transaction and the decisions of the courts construing them, and preceding similar provisions, there seems to be no sound reason upon which the property of Barney can be held liable for the payment of the plaintiffs' debt.

By the agreement which was made, whatever the tenant did

towards the erection of the building, reverted with the land to Barney, as its owner, as a consequence of the tenant's failure to observe and perform the terms of the stipulations made with him. The same disability which prevents the plaintiffs from enforcing their debt against the land itself is also equally as operative in the way of exonerating so much of the building from it as was placed by the tenant upon the property. For that likewise reverted to and vested in Barney, and as the lease was recorded before their contract was entered into, they made it subject to that contingency.

During the progress of the trial the plaintiffs offered to prove that Salem, the tenant, had done an amount of work in the construction of the building which was more than double in value the sum which Barney had advanced towards its payment. But as the tenant had failed to perform the terms of his agreement, and in consequence of that his term in the land had reverted to and become again the property of Barney, together with so much of the work as had been done upon it, the plaintiffs' case would not have been advanced by the allowance of this proof. For that reason the exception taken to its exclusion is not capable of being sustained. Other exceptions were taken in the case, but as those which have already been considered necessarily require it to be determined against the plaintiffs they do not demand any special examination for the purpose of disposing of it. As the case has now been presented the appeal cannot be sustained and the judgment should be affirmed.

DAVIS, P. J., and BRADY, J., concurred.

Judgment affirmed.