Earl, J.
Eleventh avenue, above One Hundred and Fifty-fifth street, in the city of Hew York, was laid out, and the title to the lands therefor was acquired by the commissioners of the Central Park, under chapter 565 of the Laws of 1865. Subsequently, in the year 1888, the avenue was improved by the commissioner of public works for more than one mile of its length, and the whole expense of the improvement was assessed on property fronting on the avenue. The petitioner claims that not more than one-half of such expense should have been assessed upon the adjacent property, under section 8 of the act of 1865, and seeks by this proceeding to have the assessment upon its property reduced, so that it will not be compelled to bear more than its proportion of one-half of the entire expense. The assessment was laid in 1889, and we are to determine whether the provisions of that section were in force at the time. The *33 court below held that the section had been superseded and repealed by later legislation.
The act of 1865 conferred upon the commissioners of Central Park exclusive authority to lay out streets in the city of New York, northerly of One Hundred and Fifty-fifth street, and empowered them, by proper proceedings, to acquire land for such street. It provided for the appointment of commissioners to estimate the damages caused by the opening of the streets, and for assessments for the payment of such damages upon the persons and lands benefited by the improvement; provided, however, that as to streets more than one mile in length not more than one-half of such damages should be so assessed ; the amount of the damages not so assessed being made a charge upon the county of New York. Provisions were made in subsequent sections for raising the money to pay the portion of the damages imposed upon the county. Section 8 of the act provided that the commissioners of Central Park should cause the streets laid out by them under the act to be improved as streets, and that such portion of the expense of such improvements as they should deem equitable, not exceeding as to streets more than one mile in length, one-half of such expense, should by the proper officials be assessed upon the owners and occupants of lands benefited thereby. For the purpose of carrying out the provisions of section 8, the comptroller was by subsequent sections authorized to borrow money upon the credit of the county. Section 8, and all the subsequent sections of the act, except section 12, which is now unimportant, relate exclusively to the improvement of the streets opened under the earlier sections. It is thus seen that under the act of 1865, the commissioners of Central Park were empowered to lay out streets above One Hundred and Fifty-fifth street, and to procure an assessment to be made to pay for the damage caused thereby, and that they were also empowered, under section 8, to improve the streets thus laid out, and to cause an assessment to be laid to pay the expense *34 thereof; but that neither assessment could exceed one-half of the whole amount of the damages and expenses.
By section 7 of chapter 872 of the Laws of 1872, and sections 73 and 83 of chapter 335 of the Laws of 1873, the department of public works was empowered to lay nut, open and improve all streets in the city of Mew York above Fifty-ninth street, which were not embraced within the limits of any park or public place, or immediately adjacent thereto; and the powers and jurisdiction of the park commissioners as to such streets were transferred to that department; and' so the law remained until the act, chapter 604 of the Laws of 1874. That act again restored power to the park commissioners to lay out, survey and monument all streets and avenues northerly of One Hundred and Fifty-fifth street, and cause the damages therefor to be ascertained and assessed in the manner previously provided in the act of 1865. That act substantially re-enacted the provisions of the act of 1865, so far as the latter act related to the laying out of streets. Thereafter the department of public parks was empowered to lay out the streets mentioned in the act of 1874, and to cause the damages therefor to be ascertained and assessed. But the power to improve the streets thus opened remained vested in the commissioner of public works, and the act of 1874 in no way dealt with the subject of improving streets as embraced in section 8, and the subsequent sections of the act of 1865, and in no way touched the duties of the commissioner of public works. It cannot, therefore, be said that section 8, and the subsequent sections of that act, were repealed by the act of 1874, simply because they were not re-enacted therein. That statute was in no way inconsistent with or repugnant to those sections, as it did not relate to the same subject embraced in them, to wit, the improvement of streets opened, and it did not deal with that matter.
Without further commenting on the statutes we are quite satisfied that section 8 of the act of 1865 remained in force until the enactment of the Consolidation Act (chapter *35 410, Laws of 1882), and it only remains to be determined whether it was repealed or superseded by that act. That act is entitled, “ An act to consolidate into one act, and to declare the special and local laws affecting public and local interests in the City of New York.” It was clearly intended as a consolidation and revision of all the local and special .acts relating to the City of New York. It contains many sections taken from the Code of Civil Procedure and the Code of Criminal Procedure, or the substances of such sections ; and it was provided in the last section thereof that such sections of the act “ shall not be construed as making any new enactment, or as repealing, modifying, amending or superseding any provisions of either of said codes, or any amendments thereof, but shall be treated and considered as embraced in this act solely in order that it may contain all provisions of existing laws which are of special application in the City of New York.”
And then it was further provided that certain specified sections of the act should in like manner be treated and considered as making no new enactment, but as embraced in the act for the same reason. It is thus plain that it was the leglislative intention that the Consolidation Act, made up of many acts taken from many books, should contain all the ¡special and local acts applicable to the City of New fork. The provisions of section 8 are not embraced in the Consolidation Act, and yet the other provisions of the act of 1865, so far as they were re-enacted in the act of 1874, are embraced therein. Section 8 is not only omitted from the act, but the act contains general provisions for regulating, grading and improving streets, and making assessments for the expense thereof upon the property to be benefited thereby, .and its provisions are that the aggregate expense shall be thus assessed.
We have not, therefore, a case where some prior statute has been wholly omitted and no provision of any kind substituted in its place. But this is a case where the prior provision of law has been entirely dropped and provisions *36 upon the same subject are found in the new act. Under such circumstances how is the Consolidation Act to be construed ? It was the manifest intention of the Legislature that it should take the place of the numerous special and local acts applicable to the City of New York, which had been enacted for more than a century, and to rescue them from the obscurity, uncertainty and difficulty caused by their scattered condition, and that intention should have effect.
There are decisions holding that where prior laws are revised and consolidated into a new act, such act is to be deemed to contain the entire law upon the subject, and that a prior provision of law which is dropped is to be regarded as repealed. In Ellis v. Paige (1 Pick. 43), it is said : “ It is a well settled rule that when any statute is revised, or one act framed from another, some parts being omitted, the parts omitted are not to be revived by construction, but are to be considered as annulled. To hold otherwise would be to impute to the Legislature gross carelessness or ignorance, which" is altogether inadmissible.” In Bartlett v. King (12 Mass. 537), it was held that “A subsequent statute revising the whole subject matter of a former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must, upon principles of law, as well as. in reason and common sense, operate to repeal the former,” In Bowen v. United States (14 U. S. Ct. of Claims R. 162), Hunt, J., speaking of the Revised Statutes of the United States, said: “ These Revised Statutes were enacted in order to present the entire body of the laws of the United States to the people in a concise and compact form, extricated from the confusion in which they had become involved in seventeen large volumes through which they lay scattered. The object was to relieve one from the necessity of having recourse to the earlier statutes, except in cases of grave doubt, or of absolute conflict between different sections of the revision. If errors have crept into the work of the commissioners, it is better they should stand until corrected by subsequent legislation, than that the whole body of laws. *37 should be thrown into such doubt and confusion that no one may any longer feel any confidence that he knows what the law is by reading the latest enactment made by Congress,” These views are quite applicable to the Consolidation Act, which was intended to revise and consolidate the whole statute law specially relating to the City of New York. In Butler v. Russell (3 Cliff. C. C. R. 251), Hr. Justice Cliffobd said: “ When a revising statute covers the whole subject matter of antecedent statutes, the revising statute virtually repeals the former enactments without any express provision to that effect, and even when some parts of the revised statutes are omitted in the new law, they are not in general to be regarded as left in operation, but are to be considered as annulled, if it appear plainly that the intention of the Legislature was to cover the whole subject matter by the revising statute.” In Patterson v. Tatum (3 Sawyers C. C. R. 164), Mr. Justice Field said : “ The proposition of counsel that a statute is impliedly repealed by a subsequent act revising the whole matter of the first, is undoubtedly correct.” In Matter of Southworth (5 Hun, 55), it was held that where a statute is revised, and parts of the former statute omitted from the statute revising it, the parts so omitted cannot be revived by construction.
Against the construction contended for by the petitioner, the general rule may also be invoked, that where two statutes relate to the same subject matter, though not in terms repugnant and inconsistent, if the latter one is plainly intended to prescribe the only rule that shall govern it will repeal the earlier one (Davies v. Fairbairn, 3 How. U. S. R. 636; Norris v. Crocker, 13 How. U. S. R. 429; King v. Cornell, 106 U. S. 395; Heckman v. Pinkney, 81 N. Y. 211; People v. Gold, etc. Tel. Co., 98 Id. 67; People v. Jaehne, 103 Id. 193).
Some of the authorities cited go so far as to hold that where prior statutes are revised or consolidated into one act, any part of the prior statutes omitted must be deemed to have been repealed, although the matter omitted is in no *38 way provided for in the new law. But we need not go so far in this case. Here section 8 of the act of 1865 contained provisions for the assessment and payment of the expenses of improving streets, and complete provisions upon the same subject, somewhat dissimilar, however, are contained in the Consolidation Act, and hence they must be deemed, under all the decisions, to take the place of the prior provisions, and to furnish the only rule upon the subject.
We have, therefore, reached the conclusion that section 8 of the act of 1865, although not specially repealed, was superseded by the Consolidation Act, and that the order of the General Term should therefore be affirmed with costs.
All the judges concurred ; Andrews, J., concurring in the result.
Order affirmed with costs.
Mote on the Repeal of Statutory Provisions by Indirect or Collateral Amendment of the Law.
The litigations engendered by the uncertainties in the law resulting from the rapid multiplication of statutes drawn without sufficient regard to each other to harmonize their terms, have led the courts to give expression to several guiding principles which mitigate if they do not remove those uncertainties.
These uncertainties arise chiefly from revisions without express repealing acts ; from amending “to read as follows and from repealing, or amending in that form, acts previously otherwise amended or repealed.
I. Effect of a revision as an implied repeal.
In Red Rock v. Henry, 106 U. S. 601, Mr. Justice Woods well says : The result of the authorities cited is that when an affirmative statute contains no expression of a purpose to repeal a prior law, it does not repeal it unless the two acts are in irreconcilable conflict, or unless the later statute covers the whole ground occupied by the earlier and is clearly intended as a substitute for it, and the intention of the legislature to repeal must be clear and manifest.
S. P., People ex rel. Ross v. City of Brooklyn, 69 N. Y. 605.
This principle is not confined to codifications or revisions, nor to public general laws. It may be applied to a new or *39 amended charter granted to a railroad company. Pana v. Bowler, 107 U. S. 539, 538.
On the other hand, a general act does not necessarily work an implied repeal of an earlier special act. Van Denburgh v. Village of Greenbush, 66 N. Y. 1; affi’g 4 Hun, 795.
Nor does an express repeal of inconsistent legislation necessarily have such effect. Whipple v. Christian, 80 N. Y. 523; affi’g 15 Hun, 321.
The fact that a statute which has already been impliedly repealed was afterward amended by inserting additional words, is not conclusive against allowing the effect of repeal by implication ; but the contrary may be held where the apparent object of the amending act was declaratory and it can be given effect by treating it as intended to make the act read as it ought to have read while in force. U. S. v. Auffmordt, 106 U. S. 209.
A later act providing for a particular condition or class of cases may be deemed to supersede a provision in a general act. Excelsior Petroleum Co. v. Lacey, 63 N. Y. 422.
But two systems of statutory provisions for the same subject may co-exist. Powers v. Shepard, 48 N. Y. 540; Robinson v. Rippey, Ind. 1887; 12 North East. Rep. 141.

Notes of Gases.

1. The Penal Code being constructively regarded according to its express terms as a later act than the Consolidation Act, may upon this principle be treated as repealing by this implication a provision contained in the Consolidation Act. People v. Jaehne, 103 N. Y. 182. The case of People ex rel. Heck v. Catholic Protectory, 38 Hun, 127, aff’d in 101 N. Y. 195, proceeded on the contrary view.
2. City Ct. of Brooklyn, 1889, People ex rel. Ullrich v. Bell, 4 N. Y. Supp. 869. An “ act to revise and combine in a single act all existing special and local laws affecting public interests in the city of Brooklyn,” repealed the statute authorizing the police commissioners to make rules, but re-enacted it in the same words in the revising act.— Held, that the repeal was merely to carry out the purpose of combining the laws in question, and did not necessitate making the rules anew. [Citing Wright v. Oakley, 5 Metc. 400; Middleton v. Railroad Co., 26 N. J. Eq. 269; Sheftel v. Labert, 46 Wis. 439; Lisbon v. Clark, 18 N. H. 234.]
8. People v. Sheridan, 15 N. Y. State Rep. 938 (Supm. Ct. 1888). Here the principle that a special and local act will not be deemed repealed by implication in consequence of the passage of a general law covering the subject, was applied, holding section 1938 of the Consol *40 idation Act of 1882, as to sprinkling salt on a public street, etc., still in force, notwithstanding the repeal in 1885 of the provisions on the same subject in the general act. [Penal Code, § 661, “citing Heckman v. Pinkney, 81 N. Y. 215; McKenna v. Edmundstone, 10 Daly, 410.]
4. Ross v. Wigg, 36 Hun, 107 (Supm. Ct., 1885). The rule that subsequent legislation covering the whole subject of former legislation is to be treated as a substitute for the earlier legislation,—Held, not applicable where the earlier statute (L. 1857, c. 96, § 4) provided that the recorder of Oswego should have the powers in supplementary proceedings of a county judge or justice of the supreme court, and the subsequent general provision in Code Civ. Pro., § 2444, conferred such powers upon certain other and different officers.
II. Effect of amending “ to read as follows ”
The leading case is Ely v. Holton, 15 N. Y. 395, which established the doctrine that this form is to be regarded as adopted merely for convenience, and the old part operates as not repealed but continually in force; while the new part operates as if enacted when the amending act took effect.
The principal recent care is that which arose on the collateral inheritance tax amendment act. Estate of Miller, 110 N. Y. 217.
Hence when the word “hereafter,” or a similar expression occurs in the act thus amended, it is construed distributively and applies to each part with relation to the time when that part took effect. Ely v. Holton (above cited).
An exception to this rule is recognized where the obvious object of the amendatory act is to correct an error m the original act. Town of Duanesburgh v. Jenkins, 46 Barb. 294; s. p., U. S. v. Auffmordt, 106 U. S. 209. Where such an act, properly considered, is declaratory rather than amendatory in the ordinary sense, it is worth noticing that declaratory acts are not absolutely binding upon the courts. Pardee v. Blanchard, 19 Johns. 442.
5. Nash v. White’s Bank of Buffalo, 37 Hun, 57, Sup’m. Ct. 1885. Here a statute (L. 1870, c. 163) forbade the taking of more than seven per cent, under penalty of recover)5 *7 back of twice the amount of the excess; and a subsequent statute (L. 1880, c. 567) amended the former to “read as follows;” the amendment consisting simply m substituting “six” for “seven.”—Held, that penalties already incurred m respect to the seven per cent, prohibition were not affected, as the amendatory act did not purport to affect the penalty, but only changed for the future the limit which should constitute an offense.
*41 Effect of amending in disregard of earlier amendment or repeal; and of repealing earlier acts in disregard of later amendments.] This form of obscurity commonly if not always results from the accident of the draftsman’s ignorance of the intermediate act. There is no rule of interpretation by which we can see whether the intent of a later amendment was to subvert the intermediate act, and the mistake was in not mentioning it expressly, as repealed, or whether the intent was not at all to interfere with it, in which case the mistake was in not mentioning it expressly as saved.
The general repealing act of 1877 which accompanied the first thirteen chapters of the Code of Civil Procedure, contains express provisions to the effect that the repeal thereby of a part of the Revised Statutes or the Code of Procedure should effect also a repeal of so much of any existing law as expressly amended the same by adding to or altering the text (L. 1877, p. 575, § 2), but in the case of other laws, the repeal thereby of any provision which had been amended by a subsequent provision not also expressly included in the repeal, should not affect the subsequent provision.
_ This distinction somehow commends itself to the legal mind, although the reason for it is not very clear. Probably, the justification of it is in the fact that the Revised Statutes and the Codes are so well known as distinctive statutes, that it is safe to apply to particular sections the rule which we should intuitively apply to the entire statute,—that with a repeal of the Revised Statutes or of the Code as such all mere amendments to it would fall, while it would not be safe to apply the same principle to mere session laws, where the amendment stands on the same level as the original. Certainly it cannot he said that the presumption of intent to repeal a session law is so strong from the fact that an earlier session law, embodying part of it has been repealed, as in the case of the repeal of a section the Revised Statutes or Code which it amended.)

Notes of Oases.

6. People ex rel. Canajoharie Nat. Bk. v. Supervisors of Montgomery Co., 67 N. Y. 109; s. c., 23 Am. R. 94 (Ct. of App. 1876). The amendment of a statute by incorporating the substance and body of it in the new act, is not a repeal of the original statute, but the whole force of the enactment rests upon the new, and a repeal of the latter ■does not revive the former. 3 East. 205; 6 Whart. 294.
7. People ex rel. Woodward v. Assessors of Brooklyn, 8 Abb. Pr. N. S. 150 (Supm. Ct. 1870). After a statute has been thus amended several times successively, a subsequent repeal of the earlier amendatory acts neither restores nor repeals the original statute.
*42 8. Matter of Rochester Water Comm’rs, 66 N. Y. 413 (Ct. of App. 1876). Where a statute (L. 1875, c. 33, § 11) amended a section of another act “ so as to read as follows,”—Held, under the peculiar circumstances, that the intent of the legislature was not to substitute the one section for the other, or to repeal the former one, but to add a new clause to it, and subject to its operation a new class of cases.
9. Board of Excise of Westchester v. Curley, 9 Abb. N. C. 100; mem. s. c., 69 N. Y. 608 (1877). After a statute has been amended “ to read as follows,” etc., a later statute declaring the original act (with no express reference to the amendment) to be applicable, makes it applicable as amended, and not in its original "form. To same effect, Supm. Ct. Sp. T. 1880, Mundy v. Excise Commr’s of N. Y., 9 Abb. N. C. 117.
10. People ex rel. Stiner v. Morrison, 78 N. Y. 84 (Ct. of App. 1879). Where a provision claimed to be repealed by implication is subsequently amended, this may be sufficient to control the general words of the act and show that no repeal was intended ; and this is especially true when the amendment was passed at the same session as the act which was claimed to work the repeal. [Citing 47 N. Y. 330.]
11. Implied amendment.—There may be an implied amendment, as ' well as an implied repeal. Thus where act (L. 1851, c. 272) gave authority to certain officers of a town to borrow money on the credit of the town, and to issue bonds In 1852, payable in twenty years thereafter, an act (L. 1853, c. 605) amended the act of 1851 by conferring the power upon different officers.—Held, that there was an implied modification of the act of 1851, in respect to the years when the bonds were to be issued and made payable, and in respect to other particulars necessary to carry the object aimed at into effect. Ct. of App., 1861, Gould v. Town of Sterling, 23 N. Y. 456.